106 F.3d 400
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
BRB PRINTING, INC., et al., Plaintiffs-Appellants, Cross-Appellees
v.
Vernon G. BUCHANAN, Defendant-Appellee, Cross-Appellant.
 No. 95-1968, 95-2035.
 United States Court of Appeals, Sixth Circuit.
 Jan. 7, 1997.
 
 Before: MERRITT, KEITH and SUHRHEINRICH, Circuit Judges.
 MERRITT, Circuit Judge.
 
 
 1
 Plaintiffs Ben C. Maibach III and BRB Printing, Inc., brought this action against defendant Vernon G. Buchanan for fraud, innocent misrepresentation, breach of contract, and promissory estoppel. Plaintiffs allege that Buchanan, President of American Speedy Printing Centers, induced Maibach into purchasing a franchise region by misrepresenting the region's value and personally promising to buy back the region and return the investment if Maibach became dissatisfied. Maibach did become dissatisfied, but Buchanan refused to buy back the region. Plaintiffs then sold the region back to American Speedy. The district court permitted only the contract claim to proceed to the jury, and the jury found in favor of plaintiffs. Following the verdict, the district court held that the sale of the region back to American Speedy was a novation of Buchanan's promise and entered judgment as a matter of law in favor of Buchanan. We affirm the district court's decision on novation. We remand for consideration of the other claims.
 
 
 2
 * American Speedy Printing Centers provides printing, photocopying and related services to the public. In the early 1980's American Speedy created a "master franchise program." Master franchisees were responsible for service and support of existing franchises and development of new ones in a defined geographic region. In 1988, plaintiff Ben C. Maibach III, the chief executive officer and principal owner of plaintiff BRB Printing, Inc., purchased a Mid-Atlantic Region master franchise from American Speedy. Defendant Vernon G. Buchanan was the President, Chief Executive Officer, and sole shareholder of American Speedy at the time of Maibach's purchase. Maibach, as Chairman of the Board of BRB, signed a Master Franchise Agreement for the purchase of the franchise region with Howard Berkowitz, the Group President-Chief Operating Officer of American Speedy. The same parties also signed an addendum which obligated American Speedy to re-market the franchise region if BRB was dissatisfied after eighteen months. Buchanan did not sign either agreement.
 
 
 3
 In the complaint, plaintiffs allege that Buchanan induced Maibach into purchasing the franchise region by promising, in his personal capacity, that "if Maibach became unsatisfied at any time with the investment, Maibach would have the right to return the Region and recover the full amount of his investment." Maibach asked Buchanan to place the promise in writing, but Buchanan said it would cause complications for American Speedy. In addition, the complaint alleges that Buchanan provided Maibach with false and misleading reports about the franchise region, and misrepresented the problems of the franchise. These misrepresentations included: the longstanding failure of American Speedy to provide adequate support for franchisees, previous changes of personnel, the extreme animosity toward American Speedy on the part of various franchisees, the failure or refusal of many franchisees to make required payments of royalties, the previous price of the franchise region, the qualifications of an important employee, and the potential of the region.
 
 
 4
 The complaint alleges that Maibach realized the true condition of the region after the purchase when BRB began to sustain substantial losses from the region. According to the complaint, in late 1989 and early 1990, Maibach informed Buchanan that he wanted Buchanan to honor the oral contract to buy back the region and return Maibach's investment. Buchanan refused. Plaintiffs allege that Buchanan misrepresented the financial condition of American Speedy as being strong in order to induce Maibach to enter into a repurchase agreement with American Speedy only.
 
 
 5
 On May 1, 1990, plaintiffs entered into a repurchase agreement with American Speedy. Buchanan signed the agreement as President of American Speedy. Maibach signed in his personal capacity and on behalf of BRB. As part of the agreement, American Speedy assumed full control of the region effective April 1, 1990, assumed debt obligations incurred by plaintiffs of $1,220,000, made cash payments to plaintiffs of $25,000 at closing, and agreed to pay BRB $500,000 under certain conditions. The obligations under the 1990 agreement were greater than American Speedy had agreed to assume under the Master Franchise Agreement and the Addendum. Specifically, these new obligations included operating the franchise and financing BRB's obligations. On February 3, 1992, American Speedy declared bankruptcy under Chapter 11 of the Bankruptcy Code. Maibach filed a proof of claim against American Speedy for $521,794.41.
 
 
 6
 Plaintiffs filed the complaint in this case on December 15, 1993. The complaint alleges fraud, innocent misrepresentation, breach of contract, and promissory estoppel. Buchanan filed a motion to dismiss, raising four defenses: the statute of frauds, the parol evidence rule, release, and novation. The court, treating the motion as one for summary judgment, denied Buchanan's motion and set the case for trial. Buchanan also filed a motion for limitation of damages. The court limited damages to the recovery of plaintiffs' investment.
 
 
 7
 At oral argument on the motion for limitation of damages, the district court informed plaintiffs that the only claim that would proceed to the jury would be the contract claim. The court stated:
 
 
 8
 I'm telling you right now that the only thing that you're going to go to a jury on is the contract claim [between Buchanan and Maibach].
 
 
 9
 Tr. of April 13, 1995 Hr'g at 15 (J.A. at 376). During the same hearing, the judge stated that the novation defense "was a close argument." Tr. of April 13, 1995 Hr'g at 17 (J.A. at 378).
 
 
 10
 The case proceeded to trial on the breach of contract claim. During trial, Maibach expanded the scope of his allegations by stating:
 
 
 11
 Vern [Buchanan] explicitly and clearly, on a number of occasions, commented if ever I was dissatisfied with for whatever reason, that he would take the region back, return my investment and make me whole.
 
 
 12
 Tr. of Trial on June 7, 1995 at 68 (J.A. at 431). The jury found for plaintiffs. After the verdict, the district court judge determined that the 1990 sale of the franchise region back to American Speedy was a novation of Buchanan's oral contract. The district court therefore entered judgment as a matter of law in favor of Buchanan.
 
 II
 
 13
 Under Federal Rule of Civil Procedure 50(b), a motion for judgment as a matter of law can be made on purely legal grounds: "If, for any reason, the court does not grant a motion for judgment as a matter of law made at the close of all the evidence, the court is considered to have submitted the action to the jury subject to the court's later deciding the legal questions raised by the motion." If the district court's decision is based on purely legal grounds and takes the jury's findings at face value, then this court reviews the district court's decision de novo. K & T Enterprises, Inc. v. Zurich Ins. Co., 97 F.3d 171, 176 (6th Cir.1996). This standard of review applies to both diversity and federal question cases. Id. We apply the de novo standard of review to this case because the district court's decision was based on purely legal grounds.
 
 III
 A. Novation
 
 14
 Under Michigan law, the four elements for establishing novation are:
 
 
 15
 (1) parties capable of contracting;
 
 
 16
 (2) a valid prior obligation to be displaced;
 
 
 17
 (3) the consent of all the parties to the substitution based upon sufficient consideration;
 
 
 18
 (4) the extinction of the old obligation and the creation of a valid new one.
 
 
 19
 Matter of F. Yeager Bridge & Culvert Co., 150 Mich.App. 386, 410 (1986). The parties' consent does not have to be in writing. Id. Their acceptance of the terms of a novation may be implied from the facts and circumstances surrounding the transaction. Id.
 
 
 20
 The district court found that all the elements of novation were present. The parties were capable of contracting. A valid oral agreement between Maibach and Buchanan was extinguished when American Speedy bought back the franchise region. Lastly, the district court found that the evidence of intent to novate the oral contract was extensive. During trial, Maibach testified that he asked Buchanan to fulfill his oral promise and personally guarantee the terms of the contract with American Speedy. After Buchanan refused, Maibach consented to the agreement with American Speedy without a personal guarantee from Buchanan. In the agreement, American Speedy assumed greater obligations than it had agreed to assume in the Master Franchise Agreement and Addendum. In addition, Maibach did not discuss the oral contract with Buchanan until four years after signing the agreement with American Speedy, and two years after American Speedy filed for bankruptcy. These factors convinced the district court that the plaintiffs' 1990 Agreement with American Speedy constituted a novation of Buchanan's oral promise.
 
 
 21
 We agree with the district court. When plaintiffs sold the franchise region to American Speedy in 1990, they made the performance of their oral agreement with Buchanan impossible. The Michigan Supreme Court found that the most convincing evidence of novation is an agreement which is inconsistent with an earlier agreement:
 
 
 22
 [T]he most convincing evidence [of novation] is the fact that Gorman and Freud, without reference to Butzel, contract for a disposition of the premises in a manner inconsistent with the original contract upon which Butzel's obligation to pay must rest.
 
 
 23
 Gorman v. Butzel, 272 Mich. 525, 529-31 (1935). The new agreement need not reference the previous contract because novation can be inferred:
 
 
 24
 If the new agreement contains terms that are clearly inconsistent with the previously existing contract or claim, the fact of inconsistency is itself a sufficient indication of intention to abrogate the old and substitute the new.
 
 
 25
 6 Corbin on Contracts § 1296. Plaintiffs' complaint alleges that Buchanan induced Maibach into purchasing the franchise region by promising, in his personal capacity, that "if Maibach became unsatisfied at any time with the investment, Maibach would have the right to return the Region and recover the full amount of his investment."[1] Plaintiffs could not sell the franchise region to Buchanan in return for the original investment because plaintiffs no longer owned the franchise region. As the district court concluded, "the parties to the [1990] Agreement believed that the [oral] contract between Buchanan and Maibach was subsumed by the [1990] Agreement." BRB Printing v. Buchanan, 892 F.Supp. 190, 193 (E.D.Mich.1995).
 
 
 26
 Plaintiffs argue that Buchanan's defense of novation was waived. We disagree. The defense was one of the bases for Buchanan's motion to dismiss, which the district court treated as a motion for summary judgment. In its opinion, the district court found that summary judgment on the novation defense was inappropriate. Plaintiffs argue that they would have presented evidence on this issue if they had known it was being decided at trial. However, plaintiffs have not explained what evidence they would have presented that would alter this court's decision. The facts surrounding the two agreements are not in dispute. The only dispute is about the law, which the court must apply to the facts.
 
 B. Other Claims
 
 27
 There is no judgment dismissing the fraud, innocent misrepresentation, and promissory estoppel claims. Therefore, we remand these claims for the district court to consider.
 
 C. Damages
 
 28
 The district court held that the court and not the jury would determine the damages on the breach of contract claim. Plaintiffs appeal this decision. Because this court has determined that plaintiffs' breach of contract claim is barred, the court does not need to reach this issue.
 
 D. Request For New Judge
 
 29
 Plaintiffs have clearly explained that they do not like Judge Feikens' rulings. However, they have not provided the court with any legal basis for assigning this case to a new judge. Judge Feikens is an able former Chief Judge of the district with many years of experience, and nothing in the record indicates any bias. The fact that he made rulings in the case in firm language is no basis for his replacement. Therefore, plaintiffs' request will be denied.
 
 IV
 
 30
 For the foregoing reasons, we AFFIRM the district court's decision on novation. We also REMAND for proceedings on the fraud, innocent misrepresentation, and promissory estoppel claims.
 
 
 
 [1]
 At trial, Maibach stated that Buchanan would take back the region, return the investment and make Maibach whole if Maibach became dissatisfied. This promise, like the one alleged in the complaint, requires Maibach to give the region back to Buchanan in order to recover his money